# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 50

*April Term, A.D. 2021*

*April 7, 2021*

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.                                                    D-20-0006

TERRI VIRGINIA SMITH, WSB
#7-4685,

Respondent.

## ORDER OF DISBARMENT

[¶ 1]   **This matter** came before the Court upon the Board of Professional Responsibility's "Report and Recommendation for Disbarment," filed herein March 23, 2021, pursuant to Rule 12 of the Wyoming Rules of Disciplinary Procedure (stipulated discipline).  The Court, after a careful review of the Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court, and that Respondent Terri Virginia Smith should be disbarred. It is, therefore,

[¶ 2]   **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's "Report and Recommendation for Disbarment," which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶ 3]   **ADJUDGED AND ORDERED** that, as a result of the conduct set forth in the "Report and Recommendation for Disbarment," Respondent Terri Virginia Smith shall be, and hereby is, disbarred, effective May 24, 2019; and it is further

[¶ 4]   **ORDERED** that Respondent shall comply with the requirements of the Wyoming Rules of Disciplinary Procedure, particularly the requirements found in Rule 21 of those rules.  That rule governs the duties of disbarred and suspended attorneys; and it is further

[¶ 5]  **ORDERED** that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Respondent shall pay the Wyoming State Bar the amount of $50.00, which represents the costs incurred in handling this matter, as well as pay administrative fees of $750.00.  Respondent shall pay the total amount of $800.00 to the Wyoming State Bar on or before June 30, 2021.  If Respondent fails to make payment in the time allotted, execution may issue on the award; and it is further

[¶ 6]  **ORDERED** that the Wyoming State Bar may issue the stipulated press release contained in the "Report and Recommendation for Disbarment"; and it is further

[¶ 7]  **ORDERED** that the Clerk of this Court shall docket this Order of Disbarment, along with the incorporated "Report and Recommendation for Disbarment," as a matter coming regularly before this Court as a public record; and it is further

[¶ 8]  **ORDERED** that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of Disbarment, along with the incorporated "Report and Recommendation for Disbarment," shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶ 9]  **ORDERED** that the Clerk of this Court cause a copy of this Order of Disbarment to be served upon Respondent Terri Virginia Smith.

[¶ 10]  **DATED** this 7th day of April, 2021.

BY THE COURT:

/s/

**MICHAEL K. DAVIS**
**Chief Justice**

**D-20-0006**

In the matter of )
**TERRI VIRGINIA SMITH** )
**WSB #7-4685,** ) **BPR No. 2020-081**
)
Respondent. )

IN THE SUPREME COURT
STATE OF WYOMING
FILED

MAR 23 2021

SHAWNA GOETZ, CLERK
By CHIEF DEPUTY

## REPORT AND RECOMMENDATION FOR DISBARMENT

THIS MATTER came before a Review Panel of the Board of Professional Responsibility via telephone conference call on the 9th day of March, 2021, for consideration of the parties' Stipulation for Disbarment pursuant to Rules 9 and 12 of the Wyoming Rules of Disciplinary Procedure. Present on the call were Review Panel members Jeffrey A. Donnell (Chair), John A. Masterson and Janine Thompson. Mark W. Gifford, Bar Counsel, appeared on behalf of the Wyoming State Bar. Respondent Terri Virginia Smith appeared with her counsel, Colin M. Simpson. The Review Panel having reviewed the Stipulation, the supporting Affidavit and being fully advised in the premises, finds, concludes and recommends:

### Findings

1. Respondent Terri Virginia Smith was born in Riverton and raised on the Wind River Indian Reservation and in Salt Lake City, Utah. She is a member of the Northern Arapaho Tribe. Respondent obtained her Bachelor of Science (Economics) and Juris Doctorate degrees at the University of Utah. At the time of her indictment described below, Respondent was serving as chief judge of the Wind River Tribal Court. Following the indictment, Respondent resigned the position.

2. In an essay she submitted with her 2007 application for admission to the S.J. Quinney College of Law at the University of Utah, Respondent wrote:

The desire to help my family, my tribe and the Indian community motivates me and inspires me to pursue a law degree. I have learned over the years that there are many ways that I can help my people and make a contribution to the Indian community. It can be as simple as volunteering my time to the local Indian center, representing my tribe in all I do, planning a cultural event, or being present at tribal ceremonies.

I think as an Indian person it is my duty to better our people because if we don't, who will? I feel a law degree will give me the tools I need to make a difference. It will enable me to help Indian people whether it is by giving them advice, fighting for their rights or helping my own tribe in their legal matters. I also feel there is a great need for more Indian lawyers and judges in general.

I know that law school is not going to be easy and that I will encounter many obstacles. But, I feel that I have overcome many struggles in my life to get this far. I am the first in my entire family to get a Bachelor's degree. Through my hard work and perseverance, I was able to obtain a competitive full ride scholarship to my college. I have worked hard to maintain good standing and will continue to do so in whatever I do.

3. Following graduation from law school, Respondent sat for the February 2011 bar exam in Wyoming and was admitted to the Wyoming State Bar in 2011. She accepted a position with the law firm of Baldwin, Crocker & Rudd, P.C. in Lander and remained with that firm until 2017, when Respondent took a position with the Wind River Tribal Court. Respondent and her partner have two children, a son born in 2014 and another son born in May 2019.

4. On January 17, 2020, Respondent's license to practice was suspended for non-payment of license fees per order of the Wyoming Supreme Court. Respondent has no prior disciplinary history.

## Respondent's personal history

5. Respondent was raised in a dysfunctional family. Her entire family is afflicted with addiction issues. Mother, father, stepfather, brothers and sisters all had substance abuse issues. Aunts, uncles and cousins all had either substance abuse or gambling addictions. Respondent's definition of "helping family" often meant helping them find drugs and alcohol. Living on the reservation, Respondent witnessed a lot of fighting, drinking, drug abuse and people strug-

2

gling to make a living. However, to her, this was normal. Her family relationships created a symbiosis in drug-seeking behavior. It is perhaps incongruous that in spite of such an environment and her own addictive struggles, Respondent was able to obtain not only a college degree but complete a graduate law school program and have a successful career as an attorney, although in the end she could not fully escape her formative environment. For many years, Respondent excelled in the face of extraordinary odds.

6. Respondent's use of opiate-based pills began in her first semester of law school. Initially she used the drug on the weekends; however, she increased to daily use after moving back to the Wind River Indian Reservation in 2010. At this point she "would take whatever I could get," and was often using oxycodone and hydrocodone. In August or September of 2013, she stopped using after her partner learned of her addiction. She maintained sobriety through her first pregnancy but relapsed four to five months after her son's birth (approximately January 2015). At the time of her 2019 arrest, Respondent was using oxycodone daily and was hiding her addiction from her partner.

7. Respondent was cooperative when she was first interviewed by an FBI Special Agent on March 12, 2019. The agent told Respondent that she and her twin sister, Jerri Smith, were under investigation for distributing and selling prescription pills. Respondent acknowledged that they were so engaged, that she knew that they were going to get caught and admitted she also used prescription opiates (Oxycodone and Suboxone). Respondent also admitted knowing that Jerri Smith, in addition to getting Oxycodone in Utah, was also getting meth and cocaine there and distributing it on the reservation. Respondent told the agent that while she provides pills to others, she is not making money from doing so. Respondent admitted she also helped Jerri Smith with distributing Oxycodone to Latonia Killsontop and helped her pick up money from the sale of the pills and deposited the money into Jerri Smith's bank account. Respondent was coopera-

3

tive with the agent in the initial as well as follow-up interviews and provided substantial additional information which led to the arrests and successful prosecutions of others.

### Respondent's federal court indictment

8. On March 21, 2019, Respondent was the subject of an indictment in the United States District Court for the District of Wyoming, Docket No. 1:19-cr-00050-ABJ. At the time of the indictment, Respondent was serving as chief judge of the Wind River Tribal Court. Following the indictment, Respondent resigned the position.

9. The indictment alleged that on or about April 28, 2018, Respondent used a "communication facility" (i.e., sent text messages on her cell phone) in furtherance of a conspiracy to unlawfully distribute Oxycodone. A second count alleged that on or about June 26, 2018, Respondent engaged in the unlawful distribution of cocaine. Both are felonies under the federal Controlled Substances Act. Respondent pled not guilty to both counts.

10. Respondent was arraigned in federal court in early March 2019. Respondent engaged in a comprehensive proffer interview with the United States on September 4, 2019. Four individuals were charged in state district court in Wyoming and all have been or will be sentenced for charges made resulting from Respondent's proffer.

11. On May 21, 2019, Respondent submitted her letter of resignation as chief judge of the Wind River Tribal Court to be effective May 24, 2019. Respondent has not engaged in the practice of law since May 24, 2019.

12. On May 24, 2019, a superseding indictment was filed. Count One of the superseding indictment alleged that from November 2017, through and including November 2018, Respondent and two other individuals conspired to distribute Oxycodone. Count Two and Count Three of the superseding indictment mirrored Count One and Count Two of the original indictment.

4

13. On August 6, 2019, Respondent entered pleas of guilty to two counts of the superseding indictment: Count One (conspiracy to unlawfully distribute Oxycodone) and Count Three (unlawful distribution of Cocaine). Both are felonies under the federal Controlled Substances Act.

14. At the change of plea hearing, Respondent admitted as to Count One that between November 2017 and November 2018, her twin sister, Jerri Smith, was obtaining Oxycodone pills from a source of supply in Salt Lake City, Utah. Jerri Smith would travel to Wyoming with the pills and sell them to someone who redistributed them on the reservation. Respondent knew the identity of the source of supply and knew her sister was providing the pills to Latonia Killsontop for distribution. Respondent testified that she assisted in getting the money derived from the sale of the pills deposited into Jerri Smith's bank account.

15. As to Count Three, Respondent admitted that on June 26, 2018, on the Wind River Indian Reservation, Respondent obtained two grams of cocaine from Jerri Smith. Respondent then delivered and sold the cocaine to another and used the proceeds to purchase Oxycodone pills for personal use.

16. On September 4, 2019, Respondent engaged in a comprehensive proffer interview with the United States. The primary focus of that proffer, Latonia Killsontop, was indicted on federal charges on September 26, 2019. Ms. Killsontop pled guilty before U.S. District Judge Nancy D. Freudenthal on September 14, 2020. Terri Smith's cooperation was critical to securing Ms. Killsontop's conviction. Also, Respondent's proffer resulted in charges and arrests in Fremont County, Wyoming, against Nikita Ann Addison, Johnny Junior Trujillo, Cynthia Murray and Maria Smith.

17. Accounts of Respondent's proffer were publicized in the *Riverton Ranger* on January 16, 2020; the *Gillette News Record* on January 20, 2020; the *Rock Springs Rocket Miner* on

January 20, 2020; the *Torrington Telegram* on January 20, 2020; and the *Wyoming Tribune Eagle* on January 21, 2020. To date, no one has explained how confidential information from Respondent's proffer found its way into published newspapers. Respondent recognizes that there is no way she can possibly avoid being labeled a snitch in her community and while in federal custody. Moreover, the Wind River Indian Reservation is a relatively small and insular community. The many persons who face charges or have been convicted as a result of Respondent's cooperation and assistance to the government have friends and families all over the Reservation. Families are inter-related. Loyalties run deep. The parties agree that Respondent's cooperation with prosecutors in the face of such a threat merits consideration as a mitigating factor in this disciplinary proceeding as it did in her criminal sentencing.

18. On October 11, 2019, a Revised Pre-Sentence Investigation Report prepared by Jessica C. Hood, United States Probation Officer, was filed with the Court. The report found that "[T[here is no information to suggest that Smith used her position of public trust to facilitate the commission or concealment of the offense."

19. Respondent's sentencing was delayed for several months due to the COVID-19 pandemic. On October 6, 2020, Respondent was sentenced to prison for a period of six months on both counts, with the prison terms to run concurrently, to be followed by six months of home confinement, to be followed by three years of supervised release. Respondent was ordered to pay $200.00 in special assessments ($100.00 for each count) and $500.00 for community restitution. Count Two of the superseding indictment (use of a communication facility in furtherance of a conspiracy to unlawfully distribute Oxycodone) was dismissed. It should be noted that Respondent's prison sentence represents a significant downward departure from the 10-16 months of imprisonment applicable to her offenses under federal sentencing guidelines.

20.     As evidenced by the transcript of the sentencing hearing (Exhibit A to Respondent's affidavit), U.S. District Court Judge Alan B. Johnson encouraged Respondent to overcome her addiction and return to a successful life:

> Well, I will always remember the first time I met you. It was at – the Wyoming Legislature was meeting. You were introduced as the new tribal judge to those of us who attended that first session of the legislature. Traditionally, the judiciary meets with legislators at that time.
>
> I just felt such pride for you and the career that you had ahead of you and the challenges as well of being so close to the people that would be appearing before you, and the pressures that would be placed on your shoulders in making judgment on their issues. Recognizing that those were young shoulders that had to have been bright shoulders to have been selected by your tribe to serve as chief judge of the tribal court.
>
> And I certainly learned here through the submissions of your attorney what an amazing road you have traveled to have achieved that position, and so sad that you were hiding a secret during that time. It must have a terrible – terribly painful while you were on the bench. All of us – all of us have things that we wish we hadn't done that are wrong in one way or another.
>
> I was reminded last night watching public television from Riverton, Wyoming, of an interview with a man by the name of Bryan Stevenson who is a famous civil rights attorney who handles death penalty cases primarily in the south. He reminded me of something that I knew but tend to forget with regard to the people that stand in front of me. It is the crime that we are punishing. It is that conduct that is wrong. The individual has many good things about them, and certainly you do. You are a remarkable woman in so many ways in what you have been able to achieve despite what many people would call handicaps. I am sure you didn't think about them that way particularly. But you felt a sense of responsibility to your tribe and Native American people – in general, people who are marginalized, whose housing is red lined, who live on trust property that they cannot mortgage to finance better housing, who are in a way trapped at every turn. So the road is one that there is a lot of correction that needs to occur. So we are dealing here today with only part of the story – of your story that is going to go ahead for many, many years. It is a story that can have success.
> ***
> We can point to all of those circumstances that pile one on top of another. We think about where we have ended up with you standing in front of me today. I still have great hopes for you and respect.

Sentencing transcript, pp. 6-9.

21.     Respondent's counsel, Colin M. Simpson of Cody, who had maintained regular contact with Bar Counsel throughout Respondent's criminal case, promptly informed Bar Counsel of Respondent's sentencing.

## Commencement of disciplinary proceedings

22.     The felonies of which Respondent has been convicted are "serious crimes" as that term is defined in Rule 18(e), W.R.Disc.P. Rule 18(c), W.R.Disc.P., provides:

> *Commencement of Disciplinary Proceedings Upon Notice of Conviction.* Upon receiving notice that an attorney subject to these rules has been convicted of a crime, other than a serious crime as hereinafter defined, Bar Counsel shall, following an investigation as provided in these rules, make a determination as provided by Rule 10(e) or refer the matter to the ROC for further proceedings consistent with Rule 10(f). If the conviction is for a serious crime as hereinafter defined, Bar Counsel shall obtain the record of conviction and prepare and file a formal charge against the respondent as provided in Rule 13. A certified copy of the judgment of conviction of a serious crime as defined in this Rule shall be conclusive evidence of the commission of that crime in a subsequent disciplinary proceeding.

23.     On October 14, 2020, Bar Counsel reported Respondent's federal court convictions to the Wyoming Supreme Court as required by Rule 18. On the same day, Bar Counsel filed a Formal Charge in the above-captioned disciplinary proceeding.

24.     On October 16, 2020, Respondent's counsel filed an Answer to the Formal Charge, admitting all allegations. On the same day, Mr. Simpson filed a response to Bar Counsel's Rule 18 Notice to the Court, also admitting all allegations of the Rule 18 Notice. The parties stipulated that Respondent should be allowed to cure her administrative suspension for non-payment of license fee, obtain reinstatement, and attempt an expedited resolution of disciplinary proceedings. The Court deferred to the parties' request, entering the following Order dated November 5, 2020:

> This Court notes that Bar Counsel and Respondent agree [Respondent] should not be immediately suspended from the practice of law. They inform the Court that attorney discipline proceedings have begun, with a Formal Charge already filed. The pleadings suggest that a stipulated resolution of the Formal Charge is likely.

8

Further, this Court notes that Respondent's license to practice law remains suspended for non-payment of the annual license fee. Given the circumstances, the Court concludes that Respondent should not be suspended, as a disciplinary matter, at this time. It is, therefore,

ORDERED that Respondent's license to practice law should not be suspended as a disciplinary matter at this time. However, if a stipulated resolution of the Formal Charge has not been reached by January 4, 2021, this Court will impose suspension pending resolution of that charge. Respondent and/or Bar Counsel are free to request an extension of that time period.

25. The parties attempted to reach a stipulated resolution of the Formal Charge by January 4, 2021, but were unsuccessful. On January 13, 2021, the Court issued an Order of Immediate Suspension of Respondent pursuant to Rule 18, W.R.Disc.P.

### Respondent's treatment and recovery

26. Respondent was required as a condition of pretrial release to seek substance abuse treatment. She obtained a substance abuse evaluation and was found in need of residential treatment. Terri Smith began treatment at Southwest Counseling in Rock Springs on July 29, 2019, and was discharged on December 31, 2019. The discharge summary from Southwest Counseling, which is available to the Board upon request, noted that Respondent had a difficult time adjusting to the treatment setting initially, but ultimately proved to be a motivated client. She was rated no higher than "Mild Risk" in all six of her risk categories upon discharge.

27. Since beginning treatment, Respondent has worked to wean herself completely off suboxone, and she is down to two 2mg tablets per day. Respondent remained involved in the MAT (Medically Assisted Treatment) Program at Southwest Counseling until her recent imprisonment and continues with MAT in prison.

28. Following discharge from Southwest Counseling, Respondent enrolled in Level I Aftercare treatment at Fremont Counseling in Riverton. She was attending class weekly prior to the coronavirus outbreak, after which she continued with homework assignments at her residence

9

and participated online. Respondent successfully completed a 33-week series of classes in mid-October 2020.

29.     Since 2007, Respondent has often been under the influence of opiates, but, owing at her efforts at recovery, believes that her day of complete liberation is near at hand. Respondent has not only addressed her chemical addiction but is thoroughly and laboriously exploring and correcting the thinking errors and characteristics that underlie her addiction. She is open to correction and is applying what she has learned diligently.

## Respondent's conditional admission

30.     Pursuant to Rule 12, W.R.Disc.P., Respondent conditionally admits that her conduct set forth above violated Rule 8.4(b) (committing a criminal act that reflects adversely on a lawyer's fitness to practice) of the Wyoming Rule of Professional Conduct and agrees to a disbarment, provided that the disbarment be effective May 24, 2019 (the day Respondent resigned her position as chief judge of the Wind River Tribal Court and ceased the practice of law).

## Determination of the appropriate sanction

31.     The duty violated by Respondent. Within the analytical framework of the ABA Standards, Respondent violated a duty owed to the public. Standard 5.1 sets forth the sanction guidelines for lawyers who demonstrate a failure to maintain personal integrity and is applicable to situations in which lawyers have committed a violation of Rule 8.4(b) (committing a criminal act that reflects adversely on a lawyer's fitness to practice): Applying ABA Standard 5.1 to Respondent's case, the presumptive sanction, before applying other factors set forth below, is disbarment.

32.     Respondent's mental state. Respondent acted with intent in the conduct that led to her arrest and prosecution.

10

33. _Injury caused by Respondent's conduct._ In Respondent's case, the harm to the public associated with the unlawful distribution of narcotic drugs is serious.

34. _Aggravating and mitigating factors._ The aggravating factor in Respondent's case is illegal conduct. Mitigating factors are: (1) absence of a prior disciplinary record; (2) full and free disclosure to Bar Counsel and a cooperative attitude toward proceedings; (3) imposition of other penalties or sanctions; and (4) chemical dependency during the conduct which led to Respondent's arrest and prosecution. Regarding the last factor, there is evidence that Respondent is affected by a chemical dependency; the chemical dependency caused the misconduct; Respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

35. If the Court issues an Order of Disbarment effective May 24, 2019, in accordance herewith, the parties agree to the following press release:

> The Wyoming Supreme Court issued an order disbarring Arapaho attorney Terri V. Smith from the practice of law. The order of disbarment stemmed from a 2019 felony drug arrest which ended with Smith pleading guilty to two felonies and being sentenced to six months in prison, to be followed by six months of home confinement, to be followed by three years of supervised release. Smith stipulated to the disbarment, which was presented to the Board of Professional Responsibility (BPR). In approving the BPR's recommendation for an order of disbarment, the Wyoming Supreme Court ordered Smith to pay an administrative fee in the amount of $750.00 and costs of $50.00 to the Wyoming State Bar.

## Conclusions of law

36. Rule 8.4(b), W.R.Prof.Cond., provides, "It is professional misconduct for a lawyer to: *** (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; ***"

11

37.     Rule 15(b)(3)(D), W.R.Disc.P., provides, "In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:"

    1.  Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;
    2.  Whether the lawyer acted intentionally, knowingly, or negligently;
    3.  The amount of the actual or potential injury caused by the lawyer's misconduct; and
    4.  The existence of any aggravating or mitigating factors.

38.     ABA Standard 5.1, "Failure to Maintain Personal Integrity," provides:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation:

5.11    Disbarment is generally appropriate when:
    (a)    a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or
    (b)    a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
5.12    Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.
5.13    Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.
5.14    Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

39.     The Preface to the ABA Standards includes the following discussion regarding mental state:

The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or

12

purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

40. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

41. ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1 *Generally*
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.
9.2 *Aggravation*
9.21 *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.
9.22 *Factors which may be considered in aggravation.* Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.
9.3 *Mitigation.*
9.31 *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

13

9.32 *Factors which may be considered in mitigation.* Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
(2) the chemical dependency or mental disability caused the misconduct;
(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse; and
(m) remoteness of prior offenses.

9.4 *Factors Which Are Neither Aggravating nor Mitigating.*
The following factors should not be considered as either aggravating nor mitigating:
(a) forced of compelled restitution;
(b) agreeing to the client's demand for certain improper behavior or result;
(c) withdrawal of complaint against the lawyer;
(d) resignation prior to completion of disciplinary proceedings;
(e) complainant's recommendation as to sanction; and
(f) failure if injured client to complain.

## Recommendation

In consideration of the foregoing findings of fact and conclusions of law, the Review Panel recommends as follows:

1.    That Respondent be disbarred for violations of Rule 8.4(b), W.R.Prof.Cond.

2.    That, in consideration of the significant mitigating factors set forth above and the long delay in Respondent's criminal sentencing, the effective date of the disbarment be May 24,

14

2019 (the day Respondent resigned her position as chief judge of the Wind River Tribal Court and ceased the practice of law).

3.    That, upon issuance of the order of disbarment, the foregoing press release may be issued.

4.    That Respondent be required to pay an administrative fee of $750.00 and costs of $50.00 to the Wyoming State Bar.

Dated this 12th day of March, 2021.

Jeffrey A. Donnell, Chair
Review Panel of the Board of Professional
Responsibility
Wyoming State Bar