# *IN THE SUPREME COURT, STATE OF WYOMING*

## 2025 WY 2

*October Term, A.D. 2024*

**January 2, 2025**

| | |
|---|---|
| **BOARD OF PROFESSIONAL RESPONSIBILITY, WYOMING STATE BAR,** | |
| **Petitioner,** | |
| **v.** | **D-20-0006** |
| **TERRI VIRGINIA SMITH, WSB #7-4685,** | |
| **Respondent.** | |

## ORDER REINSTATING ATTORNEY TO THE PRACTICE OF LAW

[¶1]    **This matter** came before the Court upon a Report and Recommendation for Reinstatement, filed herein December 17, 2024, by a review panel of the Board of Professional Responsibility for the Wyoming State Bar, pursuant to a stipulation.  By order entered April 7, 2021, this Court disbarred Respondent, with the period of disbarment beginning May 24, 2019.  *Bd. of Pro. Resp., Wyoming State Bar v. Smith*, 2021 WY 50, 484 P.3d 26 (Wyo. 2021).  Respondent subsequently sought reinstatement.  *See* Rule 22(b), Wyoming Rules of Disciplinary Procedure.  Now, after a careful review of Report and Recommendation for Reinstatement and the file, this Court finds the Report and Recommendation should be approved, confirmed and adopted by the Court and that Respondent Terri Virginia Smith should be reinstated to the practice of law.  It is, therefore,

[¶2]    **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Reinstatement, filed herein December 17, 2024, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed and adopted by this Court; and it is further

[¶3]    **ADJUDGED AND ORDERED** that the Respondent, Terri Virginia Smith, be, and hereby is, reinstated to the practice of law in Wyoming, effective immediately; and it is further

[¶4]  **ORDERED** that, pursuant to Rule 9(b) Wyoming Rules of Disciplinary Procedure, this Order Reinstating Attorney to the Practice of Law, along with the incorporated Report and Recommendation for Reinstatement, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶5]  **ORDERED** that the Clerk of this Court shall docket this Order Reinstating Attorney to the Practice of Law, along with the incorporated Report and Recommendation for Reinstatement, as a matter coming regularly before this Court as a public record; and it is further

[¶6]  **ORDERED** that the Clerk of this Court transmit a copy of this Order Reinstating Attorney to the Practice of Law to the members of the Board of Professional Responsibility and to the clerks of the appropriate courts of the State of Wyoming.

[¶7]  **DATED** this 2nd day of January, 2025.

**BY THE COURT:**

/s/

**KATE M. FOX**
**Chief Justice**

IN THE SUPREME COURT
STATE OF WYOMING
FILED

DEC 17 2024

SHAWNA GOETZ, CLERK

by DEPUTY

| In the matter of | ) | |
| TERRI VIRGINIA SMITH | ) | WSC. No. D-20-0006 |
| WSB #7-4685, | ) | |
| | ) | BPR No. 2020-081 |
| Respondent/Petitioner. | ) | |

## REPORT AND RECOMMENDATION FOR REINSTATEMENT

THIS MATTER came before a Review Panel ("Panel") of the Board of Professional Responsibility ("BPR") on December 12, 2024, for consideration of the Parties' Stipulated Motion for Reinstatement of Respondent. The Panel, which is comprised of Cheyenne attorney Bradley T. Cave, retired District Court Judge John C. Brooks, and non-lawyer member Brett McPeak of Jackson, has considered all evidence submitted, deliberated, and determined by unanimous vote that Respondent has established by clear and convincing evidence that she is fit to return to active.

More particularly, being fully advised in the premises, the Board FINDS, CONCLUDES AND RECOMMENDS as follows:

### Findings

1. Respondent Terri Virginia Smith was born in Riverton and raised on the Wind River Indian Reservation and in Salt Lake City, Utah. She is a member of the Northern Arapaho Tribe. Respondent obtained her Bachelor of Science (Economics) and Juris Doctorate degrees at the University of Utah. At the time of her indictment described below, Respondent was serving as chief judge of the Wind River Tribal Court. Following the indictment, Respondent resigned the position.

2. In an essay she submitted with her 2007 application for admission to the S.J. Quinney College of Law at the University of Utah, Respondent wrote:

The desire to help my family, my tribe and the Indian community motivates me and inspires me to pursue a law degree. I have learned over the years that there are many ways that I can help my people and make a contribution to the Indian community. It can be as simple as volunteering my time to the local Indian center, representing my tribe in all I do, planning a cultural event, or being present at tribal ceremonies.

I think as an Indian person it is my duty to better our people because if we don't, who will? I feel a law degree will give me the tools I need to make a difference. It will enable me to help Indian people whether it is by giving them advice, fighting for their rights or helping my own tribe in their legal matters. I also feel there is a great need for more Indian lawyers and judges in general.

I know that law school is not going to be easy and that I will encounter many obstacles. But, I feel that I have overcome many struggles in my life to get this far. I am the first in my entire family to get a Bachelor's degree. Through my hard work and perseverance, I was able to obtain a competitive full ride scholarship to my college. I have worked hard to maintain good standing and will continue to do so in whatever I do.

3. Following graduation from law school, Respondent sat for the February 2011 bar exam in Wyoming and was admitted to the Wyoming State Bar in 2011. She accepted a position with the law firm of Baldwin, Crocker & Rudd, P.C. in Lander and remained with that firm until 2017, when Respondent took a position with the Wind River Tribal Court. Respondent and her partner have two children, a son born in 2014 and another son born in May 2019.

4. Respondent was raised in a dysfunctional family. Her entire family is afflicted with addiction issues. Mother, father, stepfather, brothers and sisters all had substance abuse issues. Aunts, uncles and cousins all had either substance abuse or gambling addictions. Respondent's definition of "helping family" often meant helping them find drugs and alcohol. Living on the reservation, Respondent witnessed a lot of fighting, drinking, drug abuse and people struggling to make a living. However, to her, this was normal. Her family relationships created a symbiosis in drug-seeking behavior. It is perhaps incongruous that in spite of such an

2

environment and her own addictive struggles, Respondent was able to obtain not only a college degree but complete a graduate law school program and have a successful career as an attorney, although in the end she could not fully escape her formative environment. For many years, Respondent excelled in the face of extraordinary odds.

5. Respondent's use of opiate-based pills began in her first semester of law school after losing her first love and boyfriend earlier in the year and she was not equipped with any healthy coping skills to allow her to deal with her grief in a healthy way. Initially she used the drug on the weekends; however, she increased to daily use after moving back to the Wind River Indian Reservation in 2010. At this point she "would take whatever I could get," and was often using oxycodone and hydrocodone. In August or September of 2013, she stopped using after her partner learned of her addiction. She maintained sobriety through her first pregnancy but relapsed four to five months after her son's birth (approximately January 2015). At the time of her 2019 arrest, Respondent was using oxycodone daily and was hiding her addiction from her partner.

6. Respondent was cooperative when she was first interviewed by an FBI Special Agent on March 12, 2019. The agent told Respondent that she and her twin sister, Jerri Smith, were under investigation for distributing and selling prescription pills. Respondent acknowledged that they were so engaged, that she knew that they were going to get caught and admitted she also used prescription opiates (Oxycodone and Suboxone). Respondent was cooperative with the agent in the initial as well as follow-up interviews and provided substantial additional information which led to the arrests and successful prosecutions of others.

<u>Respondent's federal court indictment</u>

7. On March 21, 2019, Respondent was the subject of an indictment in the United States District Court for the District of Wyoming, Docket No. 1:19-cr-00050-ABJ. At the time

of the indictment, Respondent was serving as chief judge of the Wind River Tribal Court. Following the indictment, Respondent resigned the position.

8. The indictment alleged that on or about April 28, 2018, Respondent used a "communication facility" (i.e., sent text messages on her cell phone) in furtherance of a conspiracy to unlawfully distribute Oxycodone. A second count alleged that on or about June 26, 2018, Respondent engaged in the unlawful distribution of cocaine. Both are felonies under the federal Controlled Substances Act. Respondent pled not guilty to both counts.

9. Respondent was arraigned in federal court in early March 2019. Respondent engaged in a comprehensive proffer interview with the United States on September 4, 2019.

10. On May 24, 2019, Respondent submitted her letter of resignation as chief judge of the Wind River Tribal Court to be effective May 24, 2019. Respondent has not engaged in the practice of law since May 24, 2019.

11. On May 24, 2019, a superseding indictment was filed. Count One of the superseding indictment alleged that from November 2017, through and including November 2018, Respondent and two other individuals conspired to distribute Oxycodone. Count Two and Count Three of the superseding indictment mirrored Count One and Count Two of the original indictment.

12. On August 6, 2019, Respondent entered pleas of guilty to two counts of the superseding indictment: Count One (conspiracy to unlawfully distribute Oxycodone) and Count Three (unlawful distribution of Cocaine). Both are felonies under the federal Controlled Substances Act.

13. On October 11, 2019, a Revised Pre-Sentence Investigation Report prepared by Jessica C. Hood, United States Probation Officer, was filed with the Court. The report found that

4

"[T[here is no information to suggest that Smith used her position of public trust to facilitate the commission or concealment of the offense."

14. Respondent's sentencing was delayed for several months due to the COVID-19 pandemic. On October 6, 2020, Respondent was sentenced to prison for a period of six months on both counts, with the prison terms to run concurrently, to be followed by six months of home confinement, to be followed by three years of supervised release. Respondent was ordered to pay $200.00 in special assessments ($100.00 for each count) and $500.00 for community restitution. Count Two of the superseding indictment (use of a communication facility in furtherance of a conspiracy to unlawfully distribute Oxycodone) was dismissed. It should be noted that Respondent's prison sentence represents a significant downward departure from the 10-16 months of imprisonment applicable to her offenses under federal sentencing guidelines.

15. As evidenced by the transcript of the sentencing hearing, U.S. District Court Judge Alan B. Johnson encouraged Respondent to overcome her addiction and return to a successful life:

> Well, I will always remember the first time I met you. It was at – the Wyoming Legislature was meeting. You were introduced as the new tribal judge to those of us who attended that first session of the legislature. Traditionally, the judiciary meets with legislators at that time.
>
> I just felt such pride for you and the career that you had ahead of you and the challenges as well of being so close to the people that would be appearing before you, and the pressures that would be placed on your shoulders in making judgment on their issues. Recognizing that those were young shoulders that had to have been bright shoulders to have been selected by your tribe to serve as chief judge of the tribal court.
>
> And I certainly learned here through the submissions of your attorney what an amazing road you have traveled to have achieved that position, and so sad that you were hiding a secret during that time. It must have a terrible – terribly painful while you were on the bench. All of us – all of us have things that we wish we hadn't done that are wrong in one way or another.

5

I was reminded last night watching public television from Riverton, Wyoming, of an interview with a man by the name of Bryan Stevenson who is a famous civil rights attorney who handles death penalty cases primarily in the south. He reminded me of something that I knew but tend to forget with regard to the people that stand in front of me. It is the crime that we are punishing. It is that conduct that is wrong. The individual has many good things about them, and certainly you do. You are a remarkable woman in so many ways in what you have been able to achieve despite what many people would call handicaps. I am sure you didn't think about them that way particularly. But you felt a sense of responsibility to your tribe and Native American people – in general, people who are marginalized, whose housing is red lined, who live on trust property that they cannot mortgage to finance better housing, who are in a way trapped at every turn. So the road is one that there is a lot of correction that needs to occur. So we are dealing here today with only part of the story – of your story that is going to go ahead for many, many years. It is a story that can have success.
***
We can point to all of those circumstances that pile one on top of another. We think about where we have ended up with you standing in front of me today. I still have great hopes for you and respect.

16.    Respondent's counsel, Colin M. Simpson of Cody, who had maintained regular contact with Bar Counsel throughout Respondent's criminal case, promptly informed Bar Counsel of Respondent's sentencing.

## Commencement of disciplinary proceedings

17.    On October 14, 2020, Bar Counsel reported Respondent's federal court convictions to the Wyoming Supreme Court as required by Rule 18. On the same day, Bar Counsel filed a Formal Charge in the above-captioned disciplinary proceeding.

18.    On October 16, 2020, Respondent's counsel filed an Answer to the Formal Charge, admitting all allegations.

19.    The parties reached a stipulation for Respondent's disbarment pursuant to Rules 9 and 12, W.R.Disc.P., which was presented to a Review Panel of the Board of Professional Responsibility (BPR) on March 9, 2020. On March 23, 2020, the Review Panel submitted a report and recommendation to the Wyoming Supreme Court which

6

recommended that Respondent be disbarred and that her disbarment be effective May 24, 2019 (the day Respondent resigned her position as chief judge of the Wind River Tribal Couse and ceased the practice of law).

20. On April 7, 2021, the Court issued an order of disbarment of Respondent effective March 24, 2019.

21. On September 23, 2024, Respondent filed a petition for reinstatement pursuant to Rule 22(b), W.R.Disc.P. and paid therewith the requisite fee.

22. Respondent seeks reinstatement of the privilege to practice law in Wyoming, having demonstrated fitness, moral integrity, and adherence to ethical standards required of a member of the Wyoming State Bar.

23. Since the date of her disbarment, Respondent has:

- Fully complied with all conditions imposed by the Court and the Wyoming State Bar;

- Refrained from engaging in any unauthorized practice of law; and

- Paid all costs, fees, and restitution required as part of the disciplinary proceedings.

24. During her disbarment, Respondent has undertaken significant personal and professional rehabilitation. She completed a five-month inpatient substance abuse treatment program, followed by 33 weeks of after-care rehabilitation, and continues to engage in intensive individual therapy. She has taken full accountability for her past decisions, including serving her federal prison sentence, and was granted early release from probation. Respondent became trained and certified as a Peer Support Specialist, using her long-term recovery experience to

7

help others. For nearly two years, she contributed to the recovery community by working at a detox and sober living facility (Center of Hope-Volunteers of America).

25. In addition, Respondent has furthered her legal education by completing five years of continuing legal education (CLE) credits. She also actively participates in community service, serving as a board member for Recover Wyoming, and sharing her recovery journey through podcasts, law articles, newspaper features, and public speaking engagements. Most recently, she was selected as Director of the Northern Arapaho Reentry Agency, where she is dedicated to assisting formerly incarcerated individuals in their successful reintegration into the community.

26. Respondent has been actively involved in community service, including becoming trained and certified as a Peer Support Specialist and serving as a board member of Recover Wyoming. She also takes every opportunity to share her recovery story, whether at local treatment centers or within the broader community.

27. Respondent has provided numerous letters of recommendation from legal professionals, community leaders, and other individuals attesting to Respondent's moral character, professional rehabilitation, and readiness to return to the legal profession.

28. Respondent has maintained consistent and lawful conduct since the date of disbarment, as evidenced by no further criminal record, gaining and maintaining stable employment, achieving long-term recovery and being released from probation early.

29. Respondent has fully complied with all requirements set forth by this Court and the Wyoming Rules of Disciplinary Procedure pertaining to disbarment and reinstatement.

30. Respondent has complied with the five (5) year disbarment period before filing her verified petition for reinstatement, has not had any additional misconduct, has not engaged in

8

the unauthorized practice of law and has actively worked on her rehabilitation from the underlying conduct that resulted in her disbarment. See Attachment O: *Affidavit in Support of Petition for Reinstatement of Law License by Terri V. Smith.*

31.    Respondent submitted a written request for preparation of a character report to the National Conference of Bar Examiners (NCBE) and paid the requisite fee for the report. Bar Counsel has reviewed the NCBE's character and fitness investigation report regarding Respondent (dated November 18, 2024) and found no cause for concern regarding Respondent's character and fitness to return to the practice of law.

32.    Respondent has demonstrated the moral qualifications, competency, and learning required for readmission to the Wyoming State Bar, as evidenced by:

- Professional training and continued legal education;
- Character references from attorneys and others familiar with Respondent's progress; and
- Completion of counseling, mentoring, and rehabilitation programs addressing the issues that led to disbarment.

33.    Respondent has proven by clear and convincing evidence that she has been rehabilitated, has complied with all applicable disciplinary orders and with all provisions of the Wyoming Rules of Disciplinary Procedure, has not engaged in the unauthorized practice of law and is fit to practice law

## Conclusions of Law

Wyoming Rule of Disciplinary Procedure 22 provides in relevant part:

9

(b) *Reinstatement after disbarment or suspension for more than six months.* An attorney who has been disbarred or suspended for a period of greater than six (6) months may seek to return to active status by filing a verified petition for reinstatement with the BPR and serving a copy on Bar Counsel.

(1) A disbarred attorney may not file a verified petition for reinstatement until five years after the effective date of the order of disbarment.

    (A) Concurrent with the filing of a verified petition for reinstatement, a disbarred attorney shall submit a written request for preparation of a character report to the National Conference of Bar Examiners and shall pay the requisite fee for such report. A copy of the request shall be attached to the verified petition for reinstatement.

    (B) A fee of one thousand dollars ($1,000.00) shall accompany the filing of a verified petition for reinstatement by a disbarred attorney.

(2) An attorney who has been suspended for a period of greater than six (6) months may file a verified petition for reinstatement no sooner than ninety (90) days prior to the expiration of the period specified in the order of suspension unless another period is specified in the order. A fee of five hundred dollars ($500.00) shall accompany the filing of a verified petition for reinstatement by a suspended attorney.

(3) The verified petition for reinstatement shall set forth the facts other than passage of time and absence of additional misconduct upon which the petitioning attorney relies to establish that the attorney possesses all of the qualifications required of applicants for admission to the Wyoming State Bar, fully considering the previous disciplinary action taken against the attorney, and shall include certification that:

    (A) The attorney is current on the payment of annual license fees and any late charges;

    (B) The attorney has complied with all continuing legal education requirements during the disciplinary period and has paid all necessary fees;

    (C) Restitution has been made as ordered to any persons and the Client Protection Fund, including the source and amount of funds used to make restitution; and

    (D) The attorney has complied with all requirements of the Court's disciplinary order.

(4) The attorney seeking reinstatement must prove by clear and convincing evidence that the attorney has been rehabilitated, has complied with all applicable disciplinary orders and with all provisions of these rules, has not engaged in the unauthorized practice of law, and is fit to practice law.

## Recommendation

Based upon the foregoing findings of fact and conclusions of law, the Review Panel recommends that Respondent be reinstated to active status with the Wyoming State Bar.

RESPECTFULLY SUBMITTED this 16th day of December, 2024.

Bradley T. Cave
Review Panel Chair
Board of Professional Responsibility
Wyoming State Bar

11

BEFORE THE SUPREME COURT

STATE OF WYOMING

In the matter of )
TERRI VIRGINIA SMITH )  WSC. No. D-20-0006
WSB #7-4685, )
)  BPR No. 2020-081
Respondent/Petitioner. )

## RESPONDENT'S PETITION FOR REINSTATEMENT OF LAW LICENSE FOR VIOLATION OF RULE 8.4(b) W.R.Prof.Cond.

COMES NOW, Petitioner Terri Virginia Smith, and respectfully submits this Petition for

Reinstatement of Law License pursuant to Rule 22(b) of the Wyoming Rules of Disciplinary

Procedure and states as follows:

## I. INTRODUCTION

1. Petitioner was admitted to the Wyoming State Bar in June 2011 and practiced law in the

   State of Wyoming until her effective date of disbarment on May 24, 2019, which was

   outlined in the *Order of Disbarment* dated April 7th, 2021, following disciplinary

   proceedings.

2. Petitioner fully acknowledges the seriousness of the actions leading to disbarment and

   has taken comprehensive steps toward personal and professional rehabilitation since that

   time.

3. Petitioner now seeks reinstatement of the privilege to practice law in Wyoming, having

   demonstrated fitness, moral integrity, and adherence to ethical standards required of a

   member of the Wyoming State Bar.

## II. FACTUAL BACKGROUND

1. On April 7, 2021, Petitioner was disbarred by order of this Court due to violations of Rule 8.4(b) of the Wyoming Rules of Professional Conduct. Disbarment was effective May 24, 2019.

2. Since the date of disbarment, Petitioner has:

   o Fully complied with all conditions imposed by the Court and the Wyoming State Bar;

   o Refrained from engaging in any unauthorized practice of law;

   o Paid all costs, fees, and restitution required as part of the disciplinary proceedings.

3. During her disbarment, Petitioner has undertaken significant personal and professional rehabilitation. She completed a five-month inpatient substance abuse treatment program, followed by 33 weeks of after-care rehabilitation, and continues to engage in intensive individual therapy. She has taken full accountability for her past decisions, including serving her federal prison sentence, and was granted early release from probation. Petitioner became trained and certified as a Peer Support Specialist, using her long-term recovery experience to help others. For nearly two years, she contributed to the recovery community by working at a detox and sober living facility (Center of Hope-Volunteers of America).

4. In addition, Petitioner has furthered her legal education by completing five years of continuing legal education (CLE) credits. She also actively participates in community service, serving as a Board Member for Recover Wyoming, and sharing her recovery journey through podcasts, law articles, newspaper features, and public speaking engagements. Most recently, she was selected as Director of the Northern Arapaho

Reentry Agency, where she is dedicated to assisting formerly incarcerated individuals in their successful reintegration into the community.

## III. EVIDENCE OF REHABILITATION

1. Petitioner has actively engaged in and pursued professional development and education, including the completion of five years' worth of CLE credits, as documented by Marie Ellis, CLE Director at the Wyoming State Bar. Additionally, Petitioner recently participated in the 2024 Wyoming State Bar Annual Meetings through virtual attendance.

2. Petitioner has been actively involved in community service, including becoming trained and certified as a Peer Support Specialist and serving as a Board Member of Recover Wyoming. She also takes every opportunity to share her recovery story, whether at local treatment centers or within the broader community. See Attachment A: *Peer Support Certificate,* Attachment B: *Letter from Lana Mahoney* (Executive Director, Recover Wyoming), *Stay Free Forever Podcast* available at: Download - Stay Free Forever E4: Former judge and recovering opioid addict Terri Smith | Podbean, Attachment C: *Cowboy State Daily Article* (Former Wyoming Judge Busted for Drugs now Spreads Recovery Story and Hope, July 28, 2024)

3. Petitioner has obtained letters of recommendation from legal professionals, community leaders, and other individuals attesting to Petitioner's moral character, professional rehabilitation, and readiness to return to the legal profession:

   a. Attachment D: *Letter from John Olive* (Mitigation Specialist)

   b. Attachment E: *Letter from Sarah Hernandez* (University Professor)

   c. Attachment F: *Letter from Sunshine Nicholson* (Attorney)

d. Attachment G: *Letter from Lee Spoonhunter* (Tribal Leader)

e. Attachment H: *Letter from Kelly Rudd* (Attorney)

f. Attachment I: *Letter from Colin Simpson* (Attorney)

g. Attachment J: *Letter from Raquel Myers* (Attorney)

h. Attachment K: *Letter from Brad Hendry* (Director of Center Of Hope)

4. Petitioner has maintained consistent and lawful conduct since the date of disbarment, as evidenced by no further criminal record, gaining and maintaining stable employment, achieving long-term recovery and being released from probation early. See Attachment L: *Order Granting Request for Early Termination of Supervised Release*, Attachment M: *Wyoming Lawyer Magazine Article* (From Judge to Judged), Attachment N: *Wyoming Public Radio Article* (Fledgling Northern Arapaho Reentry Agency Assists previously incarcerated tribal members)

## IV. COMPLIANCE WITH DISCIPLINARY REQUIREMENTS

1. Petitioner has fully complied with all requirements set forth by this Court and the Wyoming Rules of Disciplinary Procedure pertaining to disbarment and reinstatement, specifically **Rule 22. Reinstatement After Disciplinary Suspension or Disbarment**.

   A. I am current on the payment of all annual license fees and any late charges.

   B. I have complied with all continuing legal education requirements during the disciplinary period and have paid all necessary fees. I have completed 75 CLEs and 14.5 Ethics as of August 26, 2024, enough CLEs to cover the five (5) year disbarment period.

   C. I did not owe restitution to any persons or the Client Protection Fund.

D. I have complied with all requirements of the Court's disciplinary order, including paragraph 5: payment of $800.00 to the Wyoming State Bar. Paragraph 4 of the *Order of Disbarment* also required adherence to Rule 21 of the Wyoming Rules of Disciplinary Procedure, only Rule 21(a) and (g) applied to my circumstances and therefore have been followed.

2. Petitioner has complied with the five (5) year disbarment period before filing this verified petition, has not had any additional misconduct, has not engaged in the unauthorized practice of law and has actively worked on her rehabilitation from the underlying conduct that resulted in her disbarment. See Attachment O: *Affidavit in Support of Petition for Reinstatement of Law License by Terri V. Smith.*

3. Petitioner has submitted a written request for preparation of a character report to the National Conference of Bar Examiners and paid the requisite fee for the report. A copy of the request is attached to this verified petition for reinstatement. See Attachment P: *National Conference of Bar Examiners Authorization and Release* (dated 09/07/2024).

4. Petitioner has paid the requisite fee of one thousand dollars ($1,000.00) as required by Rule 22(b)(1)(B).

## V. CURRENT FITNESS TO PRACTICE LAW

1. Petitioner has demonstrated the moral qualifications, competency, and learning required for readmission to the Wyoming State Bar, as evidenced by:
   o Professional training and continued legal education;
   o Character references from attorneys and others familiar with Petitioner's progress;
   o Completion of counseling, mentoring, and rehabilitation programs addressing the issues that led to disbarment.

## VI. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Honorable Court:

1. Issue an Order that Terri Smith has proven by clear and convincing evidence that she has been rehabilitated, has complied with all applicable disciplinary orders and with all provisions of the Wyoming Rules of Disciplinary Procedure, has not engaged in the unauthorized practice of law and is fit to practice law.

2. Reinstate Petitioner's license to practice law in the State of Wyoming;

3. Provide such other relief as the Court deems just and proper.

Respectfully submitted,

Date: September 23, 2024

Terri Virginia Smith
PO BOX 1195
Riverton, WY 82501
(307)-438-3964
ter11dc@gmail.com

# Receipt

# Wyoming State Bar

**Invoice number** EE62C1F6-0005
**Receipt number** 2263-2088
**Date paid** September 20, 2024
**Payment method** Mastercard - 7903

**Wyoming State Bar**
4124 Laramie Street
Cheyenne, Wyoming 82001
United States
+1 307-632-9061

**Bill to**
Terri Smith
ter11dc@gmail.com

## $1,000.00 paid on September 20, 2024

| Description | Qty | Unit price | Amount |
|---|---|---|---|
| Attorney Reinstatement Fee | 1 | $1,000.00 | $1,000.00 |
| | | Subtotal | $1,000.00 |
| | | Total | $1,000.00 |
| | | **Amount paid** | **$1,000.00** |



A

# International Certification & Reciprocity Consortium

certifies that

## Terri V. Smith

*has demonstrated the knowledge, skills and professional competencies for an*

## Internationally Certified Peer Recovery (ICPR)

*as attested to by*

## Recover Wyoming

September 7, 2022
_____
Date of Issue

September 7, 2024
_____
Valid Through

_____
IC&RC President

100
_____
Certificate Number







RECOVER WYOMING

September 16, 2024

To Whom It May Concern,

This letter is in support of Ms. Terri Smith in her pursuit to reinstate her law license. I initially met Ms. Smith in April of 2022, when she attended the Wyoming New Peer Specialist Training. From our interactions at training, I've learned the ways in which she has grown as an individual through her own lived experience and recovery journey, and the desire she has for helping others attain whole health wellness.

I have had the opportunity to get to know Terri a bit better the past couple of years as she became a board member for Recover Wyoming in 2023. She now serves on the executive committee of our board, filling the secretary position. Since I have known her, Ms. Smith has continued to demonstrate resiliency, leadership, and an unwavering passion to help others. She has exhibited personal and professional growth since I've known her and has been a wonderful resource for Recover Wyoming, serving as one of our state-wide board members and helping our organization collaborate with the recovery community in that area. I support Terri in all her future endeavors and have no doubt she will continue to excel in all she pursues. Please let me know if I can provide additional information.

Sincerely,

*Lana Mahoney*

Lana Mahoney, Executive Director
Recover Wyoming
1017 East Lincolnway
Cheyenne, WY 82001
(307) 421-7261
lanamahoney@recoverwyoming.org

"Healing lives and creating futures"

**LIVE UNITED**
United Way
United Way
of Laramie County

www.recoverwyoming.org



# Former Wyoming Judge Busted For Drugs Now Spreads Recovery Story And Hope

Terri Smith was a respected Wyoming tribal judge
before she was busted for dealing cocaine and
helping to sell prescription drugs. Now she's
working to help other addicts recover and find
redemption through accountability and gratitude

Clair McFarland



The smallish woman sat on a metal bed in a concrete
room meant for confining suicidal prison inmates and
watched one frosted window cast a sickly glow at her
feet.

She wasn't suicidal. She was in quarantine for 17 days after reporting to the federal women's penitentiary in Victorville, California, on Dec. 6, 2020, to serve a six-month sentence for trading cocaine and helping to market oxycodone in central Wyoming.

Twenty months earlier, she'd been the highest-ranking judge on the Wind River Tribal Court. Before that, she was a private attorney helping her tribe, the Northern Arapaho.

For 12 years she hid her own addiction to opioids. But in the chill of quarantine, surrounded by motley and forgettable books and amputated from human contact other than the clockwork rounds of the guards, Terri Smith had a strange realization.

She felt free.

"I was thinking, 'I'd rather be here in this jail cell than being an addict out there,'" Smith, 39, told Cowboy State Daily in an interview at a coffee shop in Riverton. "I was a slave to that. I was."

No longer a slave to addiction but still trapped in the bleak room, Smith wrote letters to her loved ones and braced herself for the sentence ahead of her.

Four years later, Smith is working once again on the Wind River Indian Reservation, this time as a peer support specialist to help other addicts find recovery. She's still with her children's father, raising two boys ages 9 and 5.

Smith was a little forlorn and a little excited after dropping her youngest son off at kindergarten camp, an introductory program for incoming kindergarteners.

"He wanted to go, and I wasn't ready to let him go," she said. "He's ready to take on the world. I'm like, 'OK, son.'"

## Pressure And Loss

Smith spent part of her childhood on the Wind River and part in Salt Lake City, Utah. Her mother was a single mom who was hospitable to kids and those in need, but who struggled with both poverty and alcohol dependence.

"Two things can be true," said Smith of her family. "I felt loved, and I felt cared-for, and I could tell them anything. But sometimes there was no food and they were gone for days."

It was a paradox, she said, adding that she does not resent her family.

Smith graduated from the University of Utah with her bachelor's degree in 2007.

Her longtime boyfriend, who was believed to be the first Ute tribal member accepted into the university's law school, died of a drug-and-alcohol-related issue six weeks before graduation.

He was her best friend.

The grief overwhelmed her. When she'd try to sleep, she saw flashes of her boyfriend as she had found him, Smith later told Clifford Fewel on the Stay Free Forever podcast.

She started taking prescription-strength pain pills, Smith told Cowboy State Daily. She basked in the numbness and took more. In college, she sampled cocaine as well.

"I was never really taught to deal with grief," Smith said. "(And) natives, we're not really taught to deal with grief on an everyday level — and we have so much grief, we have so much death and loss."

Many in her family would deal with grief by drinking, she said. She leaned on the quieter intoxication of pain pills.







Tribal court chief judge facing two fed charges

## Celebrated

Smith returned to the Wind River and started working for the private law firm that represented her tribe at the time.

After five years she was asked to serve as an associate judge in what was then an independent Northern Arapaho Court. Later when the Northern Arapaho Court reunited with the Eastern Shoshone Court to form the Wind River Tribal Court, Smith became the chief judge.

The local newspaper ran a glowing feature on her appointment.

Her tribe's hopes and expectations weighed upon her, Smith recounted to Fewel.

But in private, Smith kept feeding her addiction. Smith's twin sister Jerri, who still lived in Salt Lake City, got pills from an older man who had a prescription. Terri Smith took the pills to a cousin, who sold them in Fremont County and gave the money back to Smith. Smith in turn paid her sister, she said.

Like her sister, Jerri Smith was caught and sentenced. She is now out of prison and doing well, Smith said.

During that time, Smith also traded a small amount of cocaine for pills at a Pit Stop in Riverton, she said. Little did she know, Wyoming Division of Criminal Investigation agents caught the act on camera.

She said she was also getting buprenorphine illegally in an attempt to wean herself off the pills for the sake of her second son, with whom she was pregnant. The chemical is a non-euphoric drug designed to combat opioid addiction.

## And Yet, A Relief

An FBI agent came to Smith's office in March 2019. He said he wanted to talk about one of her cousins, Lawrence Oldman, who'd been murdered a few months prior, Smith said.

"It quickly became apparent he was (actually) there for me," she added. "He had pictures (of drug or money drops). He was asking questions."

Dread, panic and shame crashed down on her.

She thought of her unborn baby, with whom she was nearly eight months pregnant. She thought of her other son, her family, her job and her tribe.

But she also felt relief, Smith said.

"I don't have to live like this anymore," she said of what also went through her mind. "Because prior to me being indicted and held accountable, every single day I woke up like, 'Is this going to be me for the rest of my life? Am I going to live this double life to feed my habit?' And I saw no way out of it because there was such stigma with addiction."

Her prestigious position and composed life had made it even harder for her to seek help because she didn't want to let others down, she said.

The FBI agent asked if he could look through her phone.

She said no.

He said he'd secure a warrant for it, and in the meantime would sit with her in her office for however many hours it took, Smith recalled.

"'Fine, you can have my phone,'" she said with a sigh.
All the dirt was there.

Later, when state prosecutors charged some of
Smith's associates, court documents included details
from her "proffer," or grant of evidence, to
investigators. But Smith said the proffer was symbolic:
Investigators had the evidence from her phone
already.

She maintains that she did not mix her work as a
judge with her drug deals.

Her sentencing mitigation specialist and now-friend
John Olive attests to that as well, telling Cowboy State
Daily that he figured a judge convicted on drug-
marketing charges would have been using her
influence to jail competitors, but he was relieved to
find that wasn't the case.



**WYOMING DIGEST**

Judge free on $25K bond; ti

## Into Court

A federal magistrate arraigned Smith on March 27,
2019, in a small Lander outpost of the U.S. District
Court for Wyoming. Still visibly pregnant, Smith wore
black slacks, a black fleece jacket and black-
rimmed glasses. She spoke softly.

While drug cases would normally register as a blip on
page 5 of the county's local paper, coverage of
Smith's case went national because she was a judge.
She had to shut out the noise and move forward.
She left her job on maternity leave, and then
permanently. She swallowed her pride and saw a
Casper doctor about her addiction. The doctor
prescribed a pregnancy-friendly level of
buprenorphine, the same chemical Smith had been
getting illegally to combat her addiction.

Smith gave birth to her youngest son five weeks after her arraignment while out on bond and took him with her to in-patient addiction treatment in Rock Springs. Three years later, Smith would start receiving four Sublocade injections — the last of her drug taper. She hasn't needed addiction treatments since March of 2023, court documents say.

## Judge's Word

Smith pleaded guilty Aug. 6, 2019, in a "cold plea," meaning she didn't have a plea agreement in place. It was a gamble.

The COVID-19 pandemic descended soon after and delayed follow-up court proceedings. Smith waited more than a year to be sentenced.

Though his sentencing guidelines recommended a term of 12-18 months, U.S. District Court Judge Alan B. Johnson gave Smith a split sentence of six months in prison and another six months of ankle-monitor probation at home, to be followed by three years' probation.

Last year when Johnson saw Smith's personal and professional progress, he ended her probation early. Smith tells people that Johnson is a good and understanding judge.

Johnson redirected the praise in a phone interview with Cowboy State Daily.

"All credit goes to Terri," said Johnson of her apparent recovery. "She's the person who really accomplished everything in her life. Give her 100% of the credit."

Smith's attorney Colin Simpson voiced a similar sentiment.

"It's just wonderful to see what she's done as a result of a very traumatic event in her life and her family's lives," said Simpson. "I'm really proud of her."

## And The Secret Is ...

Aside from her doctor's help, the two keys to Smith's recovery have been accountability and gratitude, she said.

Her accountability was evident during her interview. She used phrases like "but it was my fault," and characterized her yearslong hunt for pills as blind and selfish.

Her gratitude is a daily practice.

"I get up and I'm thankful for every little thing I have — a bed, a pillow, a shower and just being next to my kids," said Smith. "I know what it's like to not have them."

Though federal prison was much easier once her quarantine was over and took the form of a "camp" complete with day jobs, Cheetos and outdoor exercise, Smith ached for her kids during her sentence. She missed out on her older son's fifth birthday. She'd had to leave her baby when he was 18 months old.

She got out two months early on good time and paroled at Casper Reentry Center. Then the former chief judge on the Wind River got a job as a room cleaner for the local Holiday Inn. She'd never had a physical labor job before, and she toiled harder than ever before for a meager paycheck.

"But I was so proud of myself when I got it," she said with a chuckle. "I never had to do that type of work, and I have so much appreciation for it now."

After two months of that she came home to serve her sentence of ankle-monitor probation with her now toddler-aged youngest by her side all day.

Smith became a peer support specialist so she could help others struggling with addiction.

This is how Smith has chosen to give back to the community she once damaged, Olive theorized.

"(During her probation) I thought she was someone who, if she was living in voluntary recovery, could be a major asset to others on the Wind River Indian Reservation," he said, adding that he's been impressed with her courage in returning to that community, and has met people who have benefited from her help.

Lana Mahoney, executive director of Recover Wyoming, said Smith's transparency about her own case is a path forward for others.

"She provides a lot of hope for people still struggling," said Mahoney. "I think that's really important."

It wasn't easy to return to the Wind River, Smith said. It's a small community with interwoven family ties: everyone knows everyone. She apologized formally to her tribal council, she recalled.

But Smith said she was surprised to find a few people who never lost faith in her, and she feels welcome again within her tribe.

"The Arapaho people are forgiving in general," she said.



Terri Smith, from left, with her cousin Dena and twin sister Jerri. (Courtesy Terri Smith)

## Grateful For The Agents Who Caught Me

Smith said she's even grateful for the DCI agents who caught her. They brought her to a fresh start.

The Wyoming Division of Criminal Investigation is happy with the outcome too.

"It is very rewarding for agents to be involved in excellent investigations and to see positive changes in the community as well as in individuals as a result of their difficult work," DCI Director Ronnie Jones told Cowboy State Daily in a Friday email. "We are very thankful this has turned into a positive event for Ms. Smith.

"I commend her courage to share her story and her dedication to her recovery. I also commend the agents and all the public servants who do their jobs every day in a professional manner to not only enforce the law, but to provide assistance to anyone in need of help to better their situation and to improve our communities throughout the state."

## Going Forward

Going forward, Smith hopes to get her law license back.

She was disbarred for a term of five years while in prison, but she's now taking the refresher courses required to reapply for her license.

Though a convicted felon, Smith said she's applying to restore her voting rights as well.

And she spreads her story.

She's written columns, appeared on podcasts and presented her story at a symposium for DCI.

What Smith wants most, she said, is to show others that through accountability and gratitude there's

hope, and sometimes triumph.

"I did the work to get better and to do better, so I'm not ashamed of (my past)," she said. "And I want people to see, no matter who you are, how far you've fallen, you can learn and do better."

*Contact Clair McFarland at*
*clair@cowboystatedaily.com*



*Clair McFarland can be reached at clair@cowboystatedaily.com.*



John D. Olive
2702 Summit Dr.
Cheyenne, WY 82009
(307) 631-9765

Wyoming State Bar
4124 Laramie St.
Cheyenne, WY 82001

September 12, 2024

RE: Terri Smith

Dear Wyoming State Bar:

My acquaintance with Terri Smith began in 2019, when I was solicited by her criminal defense attorney to assist in mitigating federal criminal charges. At the time, all I knew was that she was a sitting Tribal Judge, and was being prosecuted for delivery of controlled substances. Some of my history with her legal representation can be found in the Wyoming Lawyer Magazine article that we co-authored in October 2023, entitled "From Judge to Judged."

From working on Terri Smith's case, I learned that her struggle with addiction began in earnest during law school in Utah, following the death of her boyfriend. But the dysfunction began much earlier than that, with a biological and extended family that was rife with alcoholism, drug abuse, gambling addiction, and codependent relationships. She assisted her sister Jerri with distributing controlled substances out of a misguided desire to help her and also to provide herself with pain pills that she needed to cope with her addiction.

Following her arrest, Ms. Smith entered inpatient treatment at Southwest Counseling in Rock Springs. Frankly, she struggled with many aspects of accepting how flawed her thinking was about family dynamics and the nature of addiction. To her credit, however, she slowly made progress in accepting the need to change her thinking patterns in many areas of her life.

After sentencing, Ms. Smith served a six-month term of confinement at a federal facility in California, followed by six months of home confinement. She successfully completed supervised release (early), and has engaged in many endeavors to bring the message of recovery to others. She completed Peer Support training through Recover Wyoming to become a certified Peer Support Specialist so she can help others find their path to recovery like she was blessed to find hers. She has also worked for the Volunteers of America—Center of Hope in Riverton, where she assisted individuals undergoing substance abuse treatment, helping them through detox and sober living. She currently serves as Secretary on the Board of Directors for Recover Wyoming. She has recorded a recovery podcast with Stay Free Forever, was the keynote speaker at the Recover Wyoming banquet in 2023, and spoke at the 2024 Drug Symposium in

Cheyenne, Wyoming. Additionally, she shared her recovery story with Cowboy State Daily to inspire others to pursue sobriety. She now serves as the Director of the Northern Arapaho Reentry Agency where she helps community members successfully reentry and remain in the community following their incarceration. She works daily on a gratitude journal and inspires others to pursue recovery, especially in her home community on the Wind River Indian Reservation.

Her arrest and prosecution were unusually public events, but so too have been the steps she's taken toward recovery and building a healthy lifestyle. She has never hesitated to share her story for the benefit of others, and I know of no one who has done more to give back to the communities impacted by her actions.

I am beyond proud of Terri Smith. Professionally, I have worked with thousands of criminal defendants over three and a half decades, and she is at the top of the list for individuals who have been successfully rehabilitated. She is determined to regain her law license, and I fully support her efforts in this pursuit.

If you have any specific questions regarding Ms. Smith, please contact me at (307) 631-9765 or by email at john.olive59@gmail.com.

Sincerely,

John D. Olive

 **DEPARTMENT OF ENGLISH LANGUAGE & LITERATURE**



Wyoming State Bar
4124 Laramie St
Cheyenne, WY 82001

September 13, 2024

**Re: Terri Smith Recommendation Letter**

Dear Wyoming State Bar:

I am writing to offer my full and enthusiastic support for Terri Smith's reinstatement of her Wyoming law license. I have known Terri personally since 2005, when we both participated in the Washington Internship for Native Students (WINS) program. Over the years, we have remained close, both personally and professionally, and I have had the pleasure of witnessing her remarkable journey.

As a professor at the University of New Mexico, I have had the opportunity to collaborate with Terri on several legal research projects. Her work product has always impressed me with its depth, attention to detail, and legal acumen. Even during challenging times, she has demonstrated a strong intellectual capacity and commitment to excellence in her legal work.

Over the past five years, I have seen Terri grow tremendously as she confronted and overcame her struggles with addiction. She has shown extraordinary resilience and strength in her recovery, and I am particularly moved by her openness and willingness to share her story for the benefit of others. Her candidness and vulnerability have allowed her to serve as a source of inspiration for many, particularly those in recovery.

Terri has always possessed great potential, and I am heartened to see her realizing that potential fully. She is one of the most dedicated and compassionate individuals I know, particularly in her efforts to help others, especially those seeking recovery. I can think of no other Native American attorney more deserving of having their law license reinstated.

I am confident that if Terri is granted the privilege of practicing law again, she will make incredible use of her license. Her passion for helping others, combined with her lived experience and legal skills, will undoubtedly make her an even stronger and more effective advocate for her community.

I wholeheartedly support Terri's reinstatement and encourage the Wyoming State Bar to consider her candidacy favorably. Please do not hesitate to contact me at hernands@unm.edu or 303.550.5761 if you have any further questions.

Sincerely,

Sarah Hernandez, PhD (Sicangu Lakota)
Associate Professor of Native American Literature
Director of the Institute for American Indian Research

505.277.6347 | Department of English Language & Literatures | 1 University of New Mexico | MSC03 2170 | Albuquerque, NM 87131

**unm.edu**



**Sunshine M. Nicholson, Esq.**
SMG Consulting, LLC
17423 126th Ave. Ct. E.
Puyallup, WA, 98374
406-696-9073
SunMG.Consulting@gmail.com

September 17, 2024

**Wyoming State Bar**
4124 Laramie St.
Cheyenne, WY 82001

Dear Members of the Board,

I am writing to wholeheartedly recommend Ms. Terri Smith for readmission to the Wyoming State Bar. Having known Terri for the last seventeen years and have witnessed her journey to long-term recovery. I can confidently say that she is exceptionally deserving of her law license and is fit to return to the practice of law in Wyoming. She fully understands the impact her poor choices during active addiction had on her tribal community and has worked diligently to repair the harm. She does this by exemplifying what recovery looks like and offering help to anyone in need.

Ms. Smith, a Native American woman with immense potential, has spent the last five years dedicated to healing and wellness. Her commitment to recovery has been remarkable, and she has demonstrated an unwavering desire to give back to her tribal community. Through sharing her recovery story and inspiring others to seek sobriety, Ms. Smith has become a vital resource for those navigating similar struggles. Her ability to turn her personal challenges into a source of strength for others is a testament to her character and her capacity to contribute meaningfully to both her community and the legal profession.

At this time, there is a pressing need for Native American attorneys in the Nation, and Ms. Smith is uniquely qualified to fill this gap. Her lived experience, combined with her legal knowledge, makes her an invaluable asset to the legal community, particularly in serving Native populations. I have personally witnessed her growth, resilience, and dedication, and I have no doubt that she is fully equipped to practice law with integrity and professionalism.

I strongly support Ms. Smith's efforts to regain her law license and believe she has much to offer the legal field. If you have any questions or concerns regarding Ms. Smith, please feel free to contact me.

Kukwstsetemc (thank you),

Sunshine M. Nicholson



**Northern Arapaho Nation *477 Biixoo3etiit' Program***
*230 West Main Street*
*Riverton, WY 82501*
307-857-2436 Office ~ 307-856-4108 Fax ~ 307-332-9207 Fax





September 17, 2024

Re: Letter of Recommendation for Terri Smith's Reinstatement of Law License

To the Wyoming State Bar,

I am writing to offer my full support for the reinstatement of Terri Smith's law license. I have had the privilege of knowing Terri since 2018 when she was selected as Chief Judge of the Wind River Tribal Court. Throughout our years of working together, I have seen both the challenges she has faced and the remarkable strides she has made in her personal and professional life.

I am aware of Terri's struggles with addiction, but what stands out most to me is her unwavering commitment to rehabilitation and growth. She has taken responsibility for her actions from the outset of her legal issues in 2019 and has used the past five years to turn her life around. I have witnessed her openly share her recovery story, using her experiences to inspire and guide others who are going through similar challenges.

Recently, I hired Terri as the Agency Administrator for the Northern Arapaho Reentry Agency, a role in which she has truly excelled. Terri is uniquely suited for this position, given her lived experience of overcoming addiction, serving time in federal prison, and successfully completing probation. Her firsthand knowledge of the criminal justice system, combined with her compassionate approach, allows her to connect with and advocate for our clients in profound ways. She has been instrumental in starting the Reentry Agency from the ground up and has already made a meaningful impact in our community.

Terri's dedication to serving our tribal community is unwavering. Over the years, she has demonstrated a deep commitment to learning, growing, and giving back. I am confident that she will continue to contribute in significant ways, particularly as an attorney. Our community needs Terri in this role to help guide and represent those who are facing their own legal and personal challenges.

In my experience, Terri has proven herself to be more than deserving of having her law license reinstated. Her journey of growth and her ongoing efforts to better herself and those around her make her an asset to our tribe, and I believe she will be an even stronger advocate and attorney with her reinstatement.

Please feel free to contact me if you need any additional information.

Sincerely,

Lee Spoonhunter

Director of Northern Arapaho 477 Program,

Northern Arapaho Business Council Member, Co- Chairman, and Chairman 2016-2024

**H**

## Baldwin, Crocker & Rudd, P.C.
### *Attorneys at Law*

KELLY A. RUDD ❖ ▣
CHRISTINE LICHTENFELS ❖ ♀

337 Garfield
Post Office Box 1229
Lander, Wyoming 82520
(307) 332-3385
Fax (307) 332-2507
*www.bcrattorneys.com*

ANDREW W. BALDWIN ❖ ♀
BERTHENIA S. CROCKER ❖ ♀

*From the Desk Of*
Kelly A. Rudd
rudd@bcrattorneys.com

September 6, 2024

Wyoming State Bar
4127 Laramie Street
P.O. Box 109
Cheyenne, WY 82003-0109

RE:   Ms. Terri Smith Petition for Reinstatement

To Whom It May Concern:

I write to provide this letter of recommendation for Ms. Terri Smith, and to support her Petition for Reinstatement.

Since the time Terri lost her law license, Terri and I have remained friends and colleagues. Terri has worked very hard at overcoming addiction, and healing from the traumatic life experiences that were a factor in her substance abuse. She has been forthcoming, proactive, and outspokenly transparent in taking responsibility for her mistakes. She has set herself on a course of recovery and personal growth, and remained dedicated to her goal of achieving reinstatement. This has required discipline. Terri has embraced therapy. She has done great work at the Center of Hope and as a board member for Recover Wyoming -- all while nurturing a family.

As a result of her recovery and growth, I believe Terri has the ability make even greater contributions as a member of the Wyoming bar. Her life experience gives her a perspective that many lawyers do not have, and makes her uniquely qualified to help an underserved community, which really needs advocacy from people that understand. The discipline, focus, hard work, and humility that Terri has shown in recovery stands as a remarkable example of how the disease of opioid addiction can be overcome.

I believe in Terri and will support her if she is readmitted to the Wyoming bar. Her best work is yet to come. Please contact me if I can provide additional information or otherwise assist in the consideration of her petition.

Sincerely,

Kelly A. Rudd

*Admitted:*      ❖ Wyoming      ▣ Oregon      ♀ Of Counsel

**BURGSIMPSON**

**BURG | SIMPSON | ELDREDGE | HERSH | JARDINE PC**

**ATTORNEYS & COUNSELORS AT LAW**

WYOMING 1135 14th Street Cody, WY 82414
P: 307.527.7891 F: 307.527.7897
www.burgsimpson.com/wyoming

Hon. Alan K. Simpson
Colin M. Simpson
Larry B. Jones
Jennifer Jensen
David M. Hill
Austin Waisanen

**IN MEMORIAM**
Milward L. Simpson
1897-1993
Joseph J. Branney
1938-2001
Charles G. Kepler
1922-2012
Jerry R. Dunn
1935-2019



September 17, 2024

**RE:     Terri V. Smith Petition for Reinstatement of Law License**

To Whom it May Concern:

I represented Terri Smith during her prior criminal and State Bar proceedings and got to know her very well. She is an extraordinary woman who became caught up in circumstances she was unable to reasonably control, and she has paid a significant price for her errors in judgment.

I have read Terri's Petition for Reinstatement and Affidavit, and I continue to be impressed by how she is drug free and living to help others deal with many of the problems she experienced. She is an inspiration to her mc and her Tribe and I am proud of her and have great faith she will not fail going forward.

I am in full support of Terri Smith's law license being reinstated. I trust that her journey and successful rehabilitation is clear and that you will find her deserving of reinstatement.

Respectfully and Sincerely Yours,

Colin M. Simpson

CC: Terri Smith

**GOOD LAWYERS. CHANGING LIVES.®**



Raquel Myers, Esq., PhD, MPH
3308 Preston Road #350-381
Plano, TX 75093
310-980-3814
Raquel.Myers.Esq@gmail.com


September 16, 2024


Wyoming State Bar
4127 Laramie Street
P.O. Box 109
Cheyenne, WY 82003-0109


RE: Recommendation for Reinstatement of Terri V. Smith's Wyoming Law License


Dear Wyoming State Bar,

My name is Raquel Myers and I am writing in strong support of Terri V. Smith's application for reinstatement of her Wyoming law license. I have had the pleasure of knowing Terri for more than 17 years. We first met in law school, at the S.J. Quinney College of Law, University of Utah. Becoming immediate friends, we embarked on our legal journey together as students, including starting the first chapter of the Native American Law Student Association; she as the Chair, I as the Vice-Chair. Since then, our friendship has grown, and I have witnessed her strength and determination in both her personal and professional life.

When I first learned of Terri's struggles with addiction and the impending legal challenges she faced, I did not hesitate to lend my support. Terri has always been more than a friend to me, she has become family. She is someone I admire for her resilience and commitment to bettering herself, especially in light of the struggles she faced growing up on the Wind River Indian Reservation. Surrounded by substance use, poverty, and violence, it is a testament to her perseverance as an individual that she chose to become a lawyer to give back to her community and make a difference. I believe so much in her, in her ability to overcome her challenges, in her potential as a great lawyer, in our friendship, that I personally traveled to Victorville, California to accompany her as she self-surrendered for her prison sentence. I believe in her and in her ability to rise from adversity, and prison was, in many ways, another opportunity for her to focus on her recovery and mental health.

Terri has faced tremendous loss in her life, which contributed to her struggles. However, in the last five years, I have seen remarkable growth in her, both as an individual and as a professional. Her dedication to self-love, healing, and recovery has been nothing short of inspiring. She is

fierce and has never wavered in her sobriety since; she diligently believes in her recovery, as do I. In many ways, this path was a path she needed to take in order to grow and develop into an improved version of herself. It forced her to look at herself, to confront the struggles she has faced throughout her life and learn healthier ways to cope. She has not only regained her own strength but is now using her journey to help others in similar situations.

As the Director of her tribe's reentry program, Terri works every day to provide guidance and support to those seeking a second chance. Her personal experience allows her to connect with clients on a profound level, offering empathy, understanding, and the tools essential for success. I know that if she is granted reinstatement, she will use her law license to continue making a meaningful impact on her community and beyond.

I am confident that Terri has the character, drive, and professional ability to resume her legal career with integrity. I fully support her in this endeavor and strongly recommend her for reinstatement to the Wyoming Bar.

If you have any questions or require further information, please feel free to contact me at 310-980-3814 or 3308 Preston Road #350-381; Plano, TX 75093.

Thank you for your time and consideration.

Sincerely,

Raquel Myers, Esq., PhD, MPH



**Brad Hendry**
Program Director, Volunteers of America Northern Rockies - Center of Hope
223 W Adams Ave
Riverton, WY 82501
307-840-1882
Brad.Hendry@gmail.com

September 13, 2024

**Wyoming State Bar**
4124 Laramie St.
Cheyenne, WY 82001

Dear Wyoming State Bar,

I strongly recommend Terri Smith for readmission to the practice of law in Wyoming. Ms. Smith worked under my supervision at the Center of Hope as a Clinician Assistant for nearly two years, handling admissions and playing an instrumental role in helping countless individuals achieve sobriety and recovery.

Using her local background and personal experience, Terri connected deeply with clients. Drawing on her own recovery story, she inspired and guided them, demonstrating a remarkable ability to relate to their struggles. She showcased her professionalism, compassion, and kindness in her relationships with clients and staff. Terri consistently went above and beyond, often offering help wherever needed without prompting.

She significantly contributed to the Center of Hope by securing over $500,000 in funding from the Northern Arapaho Tribe, which provided two social detox beds over two years—a critical contribution that enhanced our ability to serve the community. Terri's dedication and initiative made her invaluable, and we greatly miss her at the Center of Hope. However, we are proud of her ongoing achievements and the positive impact she continues to make as Director of the Northern Arapaho Reentry Agency.

I do not doubt that Terri's return to the legal profession would enable her to make an even greater impact on her community. I have witnessed her lead with integrity and compassion. Her dedication to recovery, leadership abilities, and understanding of the unique challenges facing Native American communities make her well-suited to serve as an attorney again. I am confident that her reinstatement would amplify her ability to help others and serve the greater good.

Please feel free to contact me at 307-840-1882 if you have any questions or would like further information regarding Ms. Smith's qualifications.

Sincerely,
Brad Hendry
Program Director, Volunteers of America Northern Rockies - Center of Hope

FILED



4:12 pm, 3/31/23

Margaret Botkins
Clerk of Court



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

|                              |                              |
| ---------------------------- | ---------------------------- |
| UNITED STATES OF AMERICA,    |                              |
|     Plaintiff, |                        |
| VS.                          | Case No.  19-CR-00050-J      |
| TERRI SMITH,                 |                              |
|     Defendant, |                          |

---

## ORDER GRANTING REQUEST FOR EARLY TERMINATION OF SUPERVISED RELEASE

---

THIS MATTER comes to the court on Terri Smith's Motion seeking termination of supervised release, her supplement to the Motion, and the Government's opposition to her request. (ECF Nos. 170,171, and 172).   Following entry of pleas of guilty for her role in a Conspiracy to Distribute Oxycodone in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C) (Count One) and Distribution of Cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Three), she was adjudicated and sentenced to be confined for 6 months and placed on supervised release for a term of 3 years.

The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—

    (1) Terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that

1

such action is warranted by the conduct of the defendant released and the interest of justice; * * *.

18 U.S.C. § 3583(e)(1). When the court evaluates suitability of a defendant for early termination, the following criteria have been approved by the Judicial Conference Committee on Criminal Law:

(a) The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h) or has not committed a sex offense or engaged in terrorism;
(b) The person presents no identified risk of harm to the public or victims;
(c) The person is free from any court-reported violations over a 12-month period;
(d) The person demonstrates the ability to lawfully self-manage beyond the period of supervision;
(e) The person is in substantial compliance with all conditions of supervision; and
(f) The person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

The government opposes Defendant's Motion for Early Termination of Supervised Release as not being in the interest of justice because early termination will not provide adequate deterrence to criminal conduct that the Defendant might commit, the need to protect the public from further crimes of the Defendant, the kinds of sentences for the offenses charged, and the need to avoid unwarranted sentence disparities among defendants with similar records. Counsel reminded the court Defendant held a position of power, trust and authority as the Chief Tribal Judge on the Wind River Indian Reservation until shortly before her conviction. The offenses for which Defendant was convicted occurred over a period of one and one-half years. Defendant was involved in the drug distribution activities with her sister that targeted the demand for illegal substances among certain residents on the Reservation. The Government asserts Defendant's supervision is "no less of a penalty than is imprisonment-they go hand in

2

glove with holding defendants accountable for their criminal conduct. Just as the Defendant was required to serve her prison sentence, so too should she be required and expected to serve out her full period of supervised release." (ECF No. 171 at pg. 3-4).

Defendant acknowledges that termination of supervised release is a privilege that is earned, and requests consideration by the court applying the same standards appliable to other similarly situated defendants. However, the Government has directed the court to the unique circumstances and position held by the Defendant within the Wind River Indian Reservation when her criminal conduct was uncovered. That said, Ms. Smith received deserved penalties above those usually incurred because of unlawful conduct. Of course, her position with the tribes was taken and a rewarding career of service to her community was sacrificed and besmirched. Her hard-earned authority to work as a member of the State Bar of Wyoming was taken in another public proceeding. She is presently supervised as a low risk on the caseload of the United States Probation Office, requiring less scrutiny than other supervisees, and Defendant's record reflects there have been no issues of concern. She has paid the Special Assessment and Restitution ordered as part of the Judgment. (ECF No.167).

The United States Probation Office has not expressed an opinion whether Ms. Smith's Motion should or should not be approved, recognizing that the matter is presently contested by the United States. However, at my direction the following summary of Ms. Smith's history under supervision has been received by the court.

> Prior to sentencing, Ms. Smith completed an extensive term of pretrial release, during which she completed residential treatment at Southwest Counseling in

3

Rock Springs, and 33-weeks of outpatient treatment at Fremont Counseling Service in Riverton. While incarcerated, she completed RDAP.

Ms. Smith completed the first six months of supervision in home detention, monitored by RF location monitoring. She immediately resumed outpatient treatment with Southwest Counseling and began their Medically Assisted Treatment (MAT) Program. Through the program, she was prescribed Subutex.

After much research and self-advocation, Ms. Smith was able to exit the MAT program to start receiving quarterly Sublocade injections. This is a slow-release, injectable formulation of Buprenorphine. She received her first injection in December 2021. Her last injection was on March 16, 2023, and Ms. Smith reports this was the final injection. She will attend quarterly blood draws to monitor the Sublocade levels in her system for maintenance purposes.

Ms. Smith began mental health counseling soon after releasing as well. She worked with Fremont Counseling initially, and then transferred to Wind River Cares. She has worked with the same counselor since January 2022, and the focus of the sessions is healthy recovery skills and navigating employment. Ms. Smith also successfully completed a Cognitive Awareness group through Stay Free Forever.

Ms. Smith has maintained the same household since her release. She lives with her significant other, Leslie Shakespeare, and two minor children. Random home visits show a stable home, and Mr. Shakespeare reports that Ms. Smith is doing well, and he has no concerns about her. She has passed all random urinalysis tests.

In June 2022, Ms. Smith began working for the Center of Hope (Volunteers of America) in Riverton. She started part-time as a Recovery Health Technician. In September 2022, Ms. Smith was certified as a Peer Specialist through Recover Wyoming. Soon after, she was moved to full-time at work; her current position is Clinical Assistant. She reportedly oversees Admissions. Feedback from her employer has been glowing.

The Defendant has provided her own narrative of the change in her life that has resulted from her efforts under supervision. Among the accomplishments and programming that is verified by the Probation Officer's Report, Ms. Smith writes:

I am proud of the work I have done to understand why I was using and the environment that allowed me to use. I can set healthy boundaries whereas before I had no boundaries, especially with family. I have healthy friendships and my

4

relationship has grown stronger because of the accountability I have taken the work I have done to be a better person. I know I said this earlier, but I have a sense of peace I never knew existed because I grew up in chaos even before I became an addict. I have healthy habits and routines that allow me to live a honest and comfortable life. I am a better mom than I have ever been. I am unlearning unhealthy habits that have been in my family for generations. I recently completed a "Mending Broken Hearts" course on my reservation where I was able to release trauma, I have been holding onto for over fifteen (15) years. I seek out any opportunity I can for self-growth. I have put myself back out in the community and it has been so rewarding and feels amazing. I was able to write a letter to my tribal council taking accountability for my actions and also show them the work I have done on myself and share my desire to help others by being a Peer Specialist. In fact, my tribal council funded my training to become a Peer Specialist and have been very supportive.

On March 28, 2023, Defendant wrote again to inform the court that she had progressed through the MAT drug treatment program, having had the final injection on March 16. She reported that she was promoted to the Clinical Assistant position at the Center of Hope [VOA] where she believes she has a "unique opportunity to truly help others by getting them into our program as soon as possible." She is taking steps to earn back her law license in the future as well.

After reviewing the submissions from the Government and the Defendant, verified by the Probation Officer, I find that Ms. Terri Smith has met and exceeded each of the criteria of the Judicial Conference Committee on Criminal Law and satisfies the standards contained in 18 U.S.C § 3553(a) for early termination of supervised release pursuant to 18 U.S.C. § 3583(e). Ms. Smith's case is not one that is typical, and Ms. Smith is a defendant who possesses the skills and gifts that have helped her to navigate the challenges of addiction and the "chaos" that has affected the lives in her family and the children who are the product of that family life. *See*, The Center for Disease

5

Control's Adverse Childhood Experience (ACEs) study, https://americanspcc.org/take-the-aces-quiz; https://www.cdc.gov/violenceprevention/aces . It appears that the supervision ordered by the court has provided what has been needed for the Defendant to invest and thrive in her rehabilitation and treatment. She has received and accepted the tools that have helped her make significant alterations in her lifestyle, habits, and attitudes. The court will always have concern for this Defendant and others who have had their lives and judgment skewed by controlled substances. Unpredictable events might lead to a relapse, but if such misfortune should occur, the tools, the new habits, the knowledge earned by participating in sobriety programming will lead this Defendant and others not to hide the struggle, but to face it and return to the resources and lessons for sobriety.

IT IS ORDERED that Terri Smith's Motion for Termination of Supervised Release should be and the same is GRANTED; and she is DISCHARGED from further supervision.

Dated this 31 st day of March, 2023.

Alan B. Johnson
United States District Judge

6



# From Judge to Judged

## A Journey to Recovery

by Terri Smith
and John D. Olive

### Terri Smith:
### The Moment of Confrontation

It was a regular Wednesday afternoon, and I was in my office when one of the court clerks informed me that someone from the FBI was there to speak with me. When the agent came into my office, he stated that he was there to talk about one of my cousins who was murdered a few months before. It became apparent after about five minutes that he was not there for my cousin's murder case (which remains unsolved), but that he had damaging information on me. He began to ask me questions about my use of opiates and named certain people to whom I was connected. He showed me pictures of certain incriminating transactions and places.

My first reaction was shock and fear. As lawyers, we are taught to stay silent when in this type of situation or at least that is what we counsel our clients to do. That whole principle went out the window because I couldn't even think straight with my heart beating so fast and the thoughts of losing everything rushing in my head. In that moment of confrontation, I could not lie. There was proof to the contrary right in front of me. And I know now that subconsciously a part of me was ready for it to be all over...for the double life I had been leading to be over. I saw no way out of it before this...but now it all came crashing down...and part of me was relieved that I did not have to lie anymore....but I was still so full of fear. Fear is a powerful emotion and so is shame...which are two of the main reasons why I didn't reach out for help with my addiction before this moment.

I was eventually indicted on federal charges because of my residency on the Wind River Indian Reservation. In the end, I plead guilty to delivery of cocaine (which was a transaction to trade for opiates for my personal use) and conspiracy to deliver oxycodone (which I became involved in to support my addiction to opiates).

### John D. Olive
### Sentencing Mitigation Specialist

When I received a call about working on Terri Smith's case, I was both exhilarated and apprehensive. While I enjoy the excitement of high-profile cases, they also receive greater scrutiny and I feel added pressure in my work.

Dealing with a sitting judge who is both using and selling narcotics was a first for me. My initial thought was that perhaps Judge Smith was using her position on the bench to gather intelligence about drug activity on the Wind River Indian Reservation to help her avoid detection, or even that she might be recruiting customers from those who appeared before her on drug charges. In short, I was concerned that I might be dealing with an antisocial individual who had sought her position to aid her drug trafficking activities. If that was the case, I knew that there was little assistance I could give her.

Fortunately, Judge Smith was not the person I had feared she might be. So, my job was to present her to U.S. District Judge Alan B. Johnson in such a manner that he could understand the nuances of her background and understand how a fellow judicial colleague could find herself in such a position.

### Terri Smith:
### Change is hard work, especially when you never learned any better

Once I was indicted and everything came out in the open, I was finally able to reach out for the help I desperately needed but was too afraid and ashamed to ask for before my charges. I knew for a long time that I had a problem, that I needed opiates to function and that it was not right to do illegal things to obtain them. However, I did not know how to stop or why I couldn't stop on my own. I know now the science behind addiction, that a person is pre-disposed to addiction if someone

in their family line had issues with alcohol or drugs and if they have childhood trauma. And lucky me, I have both those things in abundance. While in inpatient treatment I did a paper on my family's history of substance use and/or criminality and every single family member (parents, siblings, grandparents, aunts, uncles, cousins) struggled with issues related to alcohol, drugs, gambling and incarceration. Just listing their name and issue took 13 pages front and back. I grew up in a family and in a community where alcohol and drugs were the norm and not the exception.

Treatment allowed me to find the root of my addiction and to explore the environment that allowed my addiction to grow as big as it was. I was taught that if I had a job and paid my bills then I wasn't "that bad" or that I wasn't an "addict." I justified my use in so many ways. I know now how wrong I was. In treatment, I saw how much of my thinking and behaviors were extremely like my counterparts who were there because their addiction took them away from their kids and had them committing crimes to support their drug use. I was no better than the girl sitting next to me who was court-ordered there and whose daughter was in the custody of the Department of Family Services because she was charged with neglect for using drugs while in the presence of her child. I was truly humbled by my stay in inpatient treatment and it saved my life.

## John D. Olive

Here is a truism: Statements from the defendant to the Court are usually very self-serving and make an impact. The most credible sources about a defendant's character and rehabilitation come from objective third parties. However, since most drug defendants remain in pretrial detention, seldom are objective third parties available to comment on post-offense rehabilitation. Since Terri Smith had been released to attend inpatient treatment, we had a chance to acquire the information we needed for mitigation. Southwest Counseling staff did the heavy lifting in helping Terri confront her codependency as well as her physical addiction and gave me the tools I needed for effective mitigation arguments.

## Terri Smith: Recovery is Real

Recovery has given me my life back and given me a sense of peace and gratitude I never even knew existed. I grew up in and became comfortable with chaos and trauma, but I know I do not want that for my children. I had to be the one to break this vicious cycle. Even though it took losing my law license and going to federal prison for me to change my entire way

of thinking, this recovery journey has been worth it. Some people never get the chance to find their path to recovery and are stuck in their trauma and dysfunction forever, so I know I am blessed to be here today. To know I have worked hard to learn healthier ways of living gives me so much pride and gratitude. I am no longer ashamed of my story because I understand WHY I am here and I fight to live every day with integrity. I became certified as a peer support specialist to help others find their path to recovery just as I was so blessed to find mine.

## John D. Olive

There is no more gratifying feeling than seeing a success story like Terri Smith. The discipline and rehabilitation worked together with her own innate character to produce a satisfying outcome for which she and society will continue to benefit. ◆

---

 **Terri Smith** was originally admitted to the Wyoming State Bar in 2011. She agreed to her disbarment effective May 24, 2019 (the day she resigned her post as Chief Judge of the Wind River Tribal Court) following her felony conviction in October 2020. She currently works in the recovery community as a Clinical Assistant at the Center of Hope (Volunteers of America) in Riverton, WY. She is also certified as a Peer Support Specialist which is a person who uses their own recovery journey to help others find their own path to Recovery. Ms. Smith has hopes and intentions of earning back her bar membership when the time comes.

 **John D. Olive** retired as a U.S. Probation Officer at the end of 2016, having served over 25 years in the District of Wyoming. For 22 years, he was a Guideline Sentencing Specialist. Since his retirement, Mr. Olive has worked as a Sentencing Mitigation Specialist in Wyoming and Colorado, mostly on federal cases.



## Wyoming Public Radio | By Chris Clements

Published July 31, 2024 at 2:06 PM MDT



*Courtesy Of Wyoming Public Media*

A new agency on the Wind River Reservation aims to fight disproportionately high rates of recidivism among Native Americans.

The Northern Arapaho Tribe began using over $620,000 in federal funds this year to create a tribal reentry program for previously incarcerated citizens.

It's meant to help tribal members coming from correctional facilities and jails readjust to life on the reservation.

The agency also collaborates with other groups on the reservation, like White Buffalo Recovery Center and the Center of Hope, to coordinate culturally appropriate services for both Eastern Shoshone and Northern Arapaho tribal members. That includes housing and substance abuse treatment.

"I do have lived experience," said Terri Smith, the agency administrator – for now, its only employee – and a member of the Northern Arapaho Tribe. "I've been to prison and I've been on probation. I'm in recovery. I feel like I get them on a level that others can't."

Smith said on an average day in her job, she pivots between data collection, case work and advocacy.

"[I'm] just helping them get to appointments. I help them communicate with their probation officer for them, kind of advocate for them," she said. "Make sure they understand what's expected of them."

Though it's still getting up and running, the program's goal is to eventually reduce recidivism by at least 50 percent among participants.

Smith said federal grant funding from the Bureau of Justice Assistance will last for five years, but that she hopes to apply for more funding before then to keep the agency operating.

States like Arizona and Utah have similar programs.

The portion of the Navajo Nation that lies within Utah has lowered its recidivism rate to just 6 percent after establishing a reentry agency and court.



*Courtesy Of Eddie Lobatos And WTRC*

A screenshot of a brochure for the Wind River Tribal Community Re-entry Court.

Wyoming also has its own tribal community reentry court, separate from the agency that Smith leads.

The court is made up of a federal judge, an assistant U.S. attorney, an assistant federal public defender, a U.S. probation officer and representatives from the Eastern Shoshone Recovery and White Buffalo Recovery centers.

The team visits communities across the reservation, bringing the court to local areas to work with paroled tribal citizens to ensure they don't re-offend.

*This reporting was made possible by a grant from the Corporation For Public Broadcasting, supporting state government coverage in the state. Wyoming Public Media and Jackson Hole Community Radio are partnering to cover state issues both on air and online.*



## AFFIDAVIT IN SUPPORT OF PETITION FOR REINSTATEMENT OF LAW LICENSE

My name is Terri Virginia Smith. I was originally admitted to practice law in the State of Wyoming in June 2011.

The facts contained in this affidavit are within my own knowledge and are true and correct:

1. I was disbarred from the practice of law by Order of the Wyoming Supreme Court dated April 7, 2021 for violation of Rule 8.4(b), W.R.Prof.Cond., which provides, "It is professional misconduct for a lawyer to :**(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;**" I plead guilty to two federal court felonies stemming from my addiction to opiates. My disbarment was retroactively effective to May 24, 2019, the day I resigned as Chief Judge of the Wind River Tribal Court.

2. I am current on all past annual license fees and all past and current fees for CLE.

3. I am current on all mandatory CLE requirements. As of August 26, 2024, I have received credit for 75 CLEs and 14.5 Ethics credits, enough to cover the five (5) year period of disbarment. I have kept up to date on my legal knowledge and skills. I have attended various American Indian Law conferences and CLEs. I have virtually participated in the 2023 and 2024 Wyoming State Bar Annual Meetings to keep current on the legal issues in Wyoming.

4. There have been no claims or awards made in regard to me on the Client Protection Fund for which the fund has not been reimbursed. I paid the fees required under Rule 25 of the Wyoming Rules of Disciplinary Procedure pursuant to the *Order of Disbarment* which amounted to $800 to the Wyoming State Bar.

5. I have not engaged in the unauthorized practice of law and have complied with all other applicable conditions for reinstatement.

6. The record of my recovery efforts is well documented in the *Order of Disbarment* and the *Order Granting Request for Early Termination of Supervised Release*. I would like to reiterate that I never used my position of trust (as Chief Judge of the Wind River Tribal Court) to facilitate the commission or concealment of any criminal offense and that is clearly documented throughout the criminal case pleadings.

7. I am a Native American woman in long-term recovery, having once struggled with opiate addiction. I grew up on the Wind River Indian Reservation, where substance use was commonplace. From a young age, I faced intergenerational trauma, family dysfunction, and significant grief and loss. Without the tools to cope with these challenges, I believed that earning an education and a law degree meant I had overcome them. However, my inability to cope with the grief and loss in my life eventually led my addiction to consume everything I had achieved. Since then, I have taken the necessary steps to confront the trauma, grief, and childhood issues that shaped my past. I've learned to establish firm boundaries with my extended family, and today, I experience a peace and gratitude I never knew was possible. I have fully accepted responsibility for my actions during active addiction, faced the consequences, and was granted early release from federal probation. My recovery story is now a tool I use to help others on their own path to sobriety. I take my recovery very seriously and protect it at all costs, actively working to support anyone seeking the hope of recovery.

8. I strive to live a life of integrity now, fully aware that this was something I lacked during my active addiction. I take pride in who I have become and my ability to help others.

Today, I am a better person than I have ever been—mentally, physically, emotionally, and spiritually. With a clear mind and conscience, I can think critically, and I am confident that I will be a better lawyer than I ever was before.

9. I am fully committed to doing whatever the Wyoming State Bar deems necessary to earn the privilege of reinstating my law license. Since being accepted into law school, my dream has been to use my education and skills to serve my tribal community, even though I encountered a significant setback due to my addiction. I truly believe that this experience has made me an even better advocate for my community, as my lived experiences allow me to better understand and relate to others. Being an attorney again would enable me to help so many more people in meaningful and impactful ways.

DATED THIS 20th DAY OF SEPTEMBER, 2024.

RESPECTFULLY SUBMITTED:

TERRI V. SMITH



## National Conference of Bar Examiners
## Authorization and Release



I am filing an application with the admission authority of the bar of Wyoming and hereby apply for a character report to be prepared by the National Conference of Bar Examiners (NCBE). I further consent to allow NCBE to conduct an investigation as to my moral character, professional reputation, and fitness for the practice of law. I further agree to provide additional information which may be required concerning my past record. I understand that the contents of my character report are treated confidentially by NCBE and are reported only to bar admission authorities for the purpose of making a determination regarding my character and fitness to practice law.

I also authorize and request every person, firm, company, corporation, association, court, school, college, university, other educational institution, government agency, law enforcement agency, and any other agency having control of any records, files, documents, writings, or other information pertaining to me to furnish to NCBE any such information regarding any and all charges, complaints, disciplinary actions, grievances, sanctions, suspensions, reprimands, disqualifications, censures, resignations, terminations, citations, arrests, indictments, convictions, judgments, courts-martial, non-judicial punishments, or administrative discharges (including those dismissed or otherwise erased or expunged by law, whether formal or informal, pending or closed), previous or current tax liabilities, or any other pertinent data or information pertaining to me. I further authorize NCBE or any of its agents or representatives to inspect and make copies of such documents, records, or other information. The records, however, will not include information relating to any juvenile offense.

I authorize the National Personnel Records Center in St. Louis, MO, or other custodian of my military record to release to NCBE information or photocopies from my military record.

I hereby release, discharge, and exonerate NCBE, its agents and representatives, the admitting authority of the above jurisdiction, its agents and representatives, and any person so furnishing information from any and all liability of every nature and kind arising out of the furnishing or inspection of such documents, records, and other information, or the investigation made by NCBE or by the admitting authority.

Name: TERRI SMITH
NCBE Number: N10767644
Place of Birth: RIVERTON, WYOMING, UNITED STATES
Electronic Signature: *TERRI SMITH*                                    Date: 09/07/2024

Case ID: 1192110